# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| TIONIA PUGH, )<br>)<br>PLAINTIFF, )<br>v. )<br>)<br>DOLGENCORP, LLC., )<br>)<br>DEFENDANT. )<br>)<br>) | CIVIL ACTION NO.:<br><br>JURY DEMAND |

## COMPLAINT

**I. INTRODUCTION**

1. This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through Title VII of the Civil Rights Act of 1964, as amended, including the Civil Rights Act of 1991, 42 U.S.C. Section 1981a; the Pregnancy Discrimination Act, Section 701(k); and the Pregnant Workers Fairness Act (PWFA) and 42 U.S.C. Section 1981.

**II. JURISDICTION, VENUE AND ADMINISTRATIVE PREREQUISITES**

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 2202. Venue is proper in the Middle District of Alabama under 28 U.S.C. §1391(b), and the Northern Division pursuant to Title VII's venue provision, 42

U.S.C. § 2000e-5(f).

3. Plaintiff, Tionia Pugh, (hereinafter "Plaintiff") has fulfilled all conditions precedent to the institution of this action under Title VII. Plaintiff timely filed her three charges of discrimination on March 5, 2024, May 23, 2024, and May 28, 2024, which was within 180 days of the occurrence of the last discriminatory acts she endured. Plaintiff is filing this lawsuit within 90 days of the receipt of her Right-To-Sue Letters from the Equal Employment Opportunity Commission, which were issued on March 17, 2025.

### III.   PARTIES

4. Plaintiff, Tionia Pugh, (hereinafter "Plaintiff") is a citizen of the United States and a resident of the State of Alabama and is over nineteen (19) years of age.

5. Defendant, Dolgencorp, LLC, (hereinafter "Defendant") is an entity subject to suit under Title VII and employs at least fifteen (15) persons.

### IV.   FACTUAL ALLEGATIONS

6. Plaintiff is an African American woman who began working for Defendant, which does business as Dollar General, on or around June 6, 2023, as a full time Lead Sales Associate at Store No. 18648 located in Letohatchee, Alabama.

7. Plaintiff was hired by General Manager Ronnie Dannelly, a white female.

8. Within an hour after Plaintiff's first shift began, Dannelly was replaced by a new General Manager named Ashley Roetten, who is also a white female.

9.      GM Roetten decided to pay Plaintiff $10.00 an hour as a Lead Sales Associate.

10.     On June 10, 2023, a white female, Dianna Delfemine, transferred to Store No. 18648 to work as a Lead Sales Associate.

11.     Plaintiff applied for the Assistant Manager job in the summer of 2023, but on July 26, 2023, Roetten promoted Delfemine over Plaintiff to that Assistant Manager job, initially paying her (Delfemine) $14.00 an hour and then raising that up to $15.47 an hour.

12.     Plaintiff was substantially more qualified than Delfemine for that job.

13.     Funds began to come up short in the store and Roetten falsely blamed Plaintiff for the missing money, but the cameras supported the fact that Plaintiff was not stealing.

14.     Around early December 2023, Plaintiff contacted District Manager Atina Hussey and Human Resources, or what Defendant calls the Employee Resource Center ("the ERC"), and complained that Roetten was racially discriminating against her in the way that she treated her, such as accusing her of stealing, cutting her hours, and denying her a promotion.

15.     After Plaintiff complained of discrimination, Roetten retaliated against her by significantly reducing Plaintiff's scheduled hours in December 2023 and constantly requiring her to work the night shift.

16. Plaintiff contacted District Manager Hussey and told him that Roetten was retaliating against her for complaining of discrimination.

17. On or around December 18, 2023, Roetten filed a false police report on Plaintiff's boyfriend saying that he tried to force entry into the store. Plaintiff's boyfriend filed a complaint about the false report to the corporate office of Defendant.

18. Delfemine moved to a new store in late Dec. 2023, which opened up the Assistant Manager position at Plaintiff's location.

19. Also in December 2023, Skyler Biddle, a white part-time cashier who would be under Plaintiff, was hired at $9.00 an hour, but Roetten raised her pay to $10.50 an hour when she became a part-time lead key holder which meant that Biddle was making more than Plaintiff, who was full-time still making $10.00 an hour.

20. A new District Manager named Eric Titus, also white, took over, and on or around February 17, 2024, Titus promoted Plaintiff to the Assistant Manager position under Roetten.

21. However, Roetten decided to pay Plaintiff $14.00 an hour, while the former Assistant Manager Delfemine had made $15.47.

22. Defendant then promoted Skyler Biddle to Plaintiff's full-time Lead job and paid her $11.75 an hour, which was higher than the $10.00 an hour that Plaintiff had made in the same position.

23. Plaintiff filed her first EEOC Charge against Defendant on March 5, 2024.

24. After Plaintiff filed her EEOC Charge, Roetten retaliated against Plaintiff by disciplining her for things she did not do.

25. Roetten wrote Plaintiff up for allegedly taking vacation time, but Plaintiff did not take vacation time.

26. Roetten wrote Plaintiff up for her drawer being short, but it was not short.

27. Roetten wrote Plaintiff up for being a no-call-no-show despite the fact that Plaintiff had previously requested off to see the doctor because she was 7 months pregnant and having complications.

28. The doctor performed an ultrasound to check on the health of Plaintiff's baby and Plaintiff submitted an excuse from that doctor, but Roetten still wrote her up for missing work.

29. In further retaliation, Roetten constantly scheduled Plaintiff to work weekends, knowing that other employees had been working the weekends instead of Plaintiff because Plaintiff did not have anyone to watch her children.

30. At least one customer to the store witnessed Roetten's abusive treatment of Plaintiff and other black employees, and that customer complained to the corporate office that Roetten was discriminating against Plaintiff and other black employees in the store.

31. While working at the store, Roetten has referred to African Americans as "niggers," which shows her racial animus towards Plaintiff.

32. In March 2024, Plaintiff purchased a pregnancy test while at work, went into the employee bathroom, and took the pregnancy test.

33. That same day, Plaintiff informed Roetten that she was pregnant and Roetten told Plaintiff she did not need any more kids.

34. Roetten then said to Plaintiff something like "while people like me are not able to have kids but you have too many." At that time Plaintiff had four children.

35. In April 2024, Plaintiff began having complications with her pregnancy and Plaintiff asked Roetten if she could work the second shift as an accommodation for her pregnancy, as she was having morning sickness and other more serious pregnancy-related health issues that were mostly causing her problems in the morning.

36. Roetten refused Plaintiff's pregnancy accommodation request and told Plaintiff that she had to be there for a year before she could get any type of accommodation.

37. On or around May 22, 2024, Plaintiff told District Manager Eric Titus how Roetten had been retaliating against her.

38. Titus told Plaintiff that what she was complaining about was a figment of her imagination.

39. When Plaintiff tried to show Titus proof of the retaliation, Titus asked Plaintiff if she was saying it was a racist thing, and Plaintiff confirmed that it was indeed race discrimination.

40. On May 27, 2024, the retaliation continued when Roetten took Plaintiff's keys from her and told Plaintiff that she was being demoted to the position of Sales Associate (Cashier).

41. Roetten told Plaintiff she was being demoted because of her lack of availability.

42. Roetten then told Plaintiff that she really did not need another cashier and fired Plaintiff.

43. Upon information and belief Plaintiff was replaced by a white employee.

44. After Defendant demoted Plaintiff out of the Assistant Manager job, Defendant filled it with a white woman named Connie.

45. Defendant's articulate reasons for the above stated adverse employment actions are not legitimate, and Defendant's stated reasons are a pretext created to hide the fact that it terminated Plaintiff because of her race, in retaliation for her complaint of discrimination, because of her pregnancy, and because it did not want to accommodate Plaintiff for her pregnancy.

46. In the alternative, even if Defendant had a legitimate reason for terminating Plaintiff, her race and sex/pregnancy remained at least a motivating factor in the termination decision.

47. Defendant, by and through its agents, engaged in the practices complained of herein with malice and/or with reckless indifference to Plaintiff's federally protected rights.

48. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for reinstatement or front pay, backpay, declaratory judgment, injunctive relief, compensatory, and punitive damages is her only means of securing adequate relief.

49. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## V. CAUSES OF ACTION

### A. COUNT I - Race Discrimination, Wage Discrimination, and Terminating Plaintiff in Violation of Title VII and Section 1981.

50. Plaintiff brings this Count pursuant to Title VII and Section 1981.

51. Defendant discriminated against Plaintiff because of her African American race by engaging in the adverse employment actions detailed in this Complaint, specifically by paying her lower wages than similarly situated white employees and terminating her employment.

52. Store Manager Roetten's use of racial slurs at work shows her animus towards African American employees such as Plaintiff.

53. Defendant has failed to articulate a legitimate non-discriminatory reason for paying Plaintiff lower wages and terminating Plaintiff.

54. Defendant claims Plaintiff quit her job, but that is not true; Defendant terminated Plaintiff.

55. Upon information and belief, Defendant replaced Plaintiff with a white employee.

56. Said discrimination was done maliciously, willfully, and with reckless disregard for the rights of Plaintiff.

57. Plaintiff may prevail under either a "pretext" theory or under a mixed-motive theory under Title VII, as even if Defendant had legitimate reasons for terminating Plaintiff, race was at least a motivating factor behind Defendant's decision to terminate Plaintiff.

58. Pursuant to Plaintiff's Section 1981 claim, but for Plaintiff's race Defendant would not have terminated her employment.

59. Said racial discrimination was done maliciously, willfully, and with reckless disregard for the rights of Plaintiff.

60. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for reinstatement or front pay, backpay,

declaratory judgment, injunctive relief, compensatory, and punitive damages is her only means of securing adequate relief.

61. Plaintiff is now suffering, and will continue to suffer, irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

### B. COUNT II – Retaliatory Termination in Violation of Title VII and Section 1981.

62. Plaintiff brings this Count pursuant to Title VII of the Act of Congress known as the Civil Rights Act of 1964 42 U.S.C. Section 2000e et seq., as amended, 42 U.S.C. Section 1981(a) and 42 U.S.C. Section 1981.

63. Plaintiff engaged in protected activity when she complained of discrimination and filed her first EEOC Charge against Defendant during her employment.

64. After Plaintiff reported discrimination, Defendant retaliated against Plaintiff by taking materially adverse employment actions against her, including terminating her because she had complained of discrimination and filed an EEOC Charge during her employment.

65. But for Plaintiff's engagement in protected activity, Defendant would not have taken these materially adverse employment actions against her.

66. Said retaliation was done maliciously, willfully, and with reckless disregard for the rights of Plaintiff.

67. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for reinstatement or front pay, backpay,

declaratory judgment, injunctive relief, compensatory and punitive damages is her only means of securing adequate relief.

68. Plaintiff is now suffering, and will continue to suffer, irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

### C. COUNT III – Terminating Plaintiff because of her Pregnancy in violation of the Pregnancy Discrimination Act.

69. Defendant discriminated against Plaintiff based on her sex/pregnancy by terminating her.

70. Plaintiff informed Defendant, specifically Roetten, that she was pregnant in March 2024, and when Plaintiff began having complications with her pregnancy Roetten terminated her.

71. Defendant's articulated reasons for these adverse employment actions described in the facts of this complaint are not legitimate; in the alternative, Plaintiff may prevail under a mixed-motive theory, as even if Defendant had legitimate reasons for terminating her, sex/pregnancy was at least a motivating factor in the adverse employment actions Defendant took against her.

72. Said discrimination was done maliciously, willfully, and with reckless disregard for the rights of Plaintiff.

73. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for reinstatement or frontpay, backpay,

declaratory judgment, injunctive relief, and the damages sought in this complaint are her only means of securing adequate relief.

74. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

### D. COUNT IV – Violation of the Pregnant Workers Fairness Act by Failing to Reasonably Accommodate Plaintiff and Taking Adverse Employment Actions Against Her.

75. Defendant refused to provide reasonable accommodations related to Plaintiff's pregnancy and instead terminated her.

76. Defendant refused to accommodate Plaintiff's pregnancy by allowing her to work the second shift to accommodate the illnesses she was having because of her pregnancy.

77. Defendant cannot demonstrate that accommodating Plaintiff would impose an undue hardship on the operation of its business.

78. Defendant took adverse employment actions against Plaintiff on the account of Plaintiff requesting a reasonable accommodation related to her pregnancy.

79. Defendant's decision to terminate Plaintiff to avoid accommodating her pregnancy violated the Pregnant Workers Fairness Act.

80. As a result of Defendant's failure to accommodate, Plaintiff has suffered monetary damages including lost wages, and non-economic compensatory

damages including, pain, humiliation, mental anguish, and suffering and punitive damages.

## VI. DAMAGES

81. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

82. Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional and physical pain and anguish and lost wages and other pecuniary losses as a consequence of Defendant's unlawful conduct.

83. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for reinstatement or front pay, backpay, declaratory judgment, injunctive relief, compensatory and punitive damages is her only means of securing adequate relief.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of Defendant are violative of the rights of Plaintiff as secured by Title VII.

2. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at

Defendant's request from continuing to violate Title VII.

3. Enter an Order requiring Defendant to make Plaintiff whole by awarding her reinstatement or front pay, backpay, compensatory, punitive, and/or nominal damages.

4. Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses and post judgment interest.

**Plaintiff Demands a Trial by Struck Jury on All Issues Triable by a Jury.**

Respectfully submitted,

/s/ Jon C. Goldfarb
Jon C. Goldfarb asb-5401-f58j
L. William Smith asb-8660-a61s
Christina M. Malmat asb-1214-y44q
Counsel for Plaintiff

**OF COUNSEL:**
WIGGINS, CHILDS, PANTAZIS, FISHER,
& GOLDFARB, LLC.
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500